Date signed January 25, 2013



THOMAS J. CATLIOTA
U. S. BANKRUPTCY JUDGE

## IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE DISTRICT OF MARYLAND
### at GREENBELT

| | |
|---|---|
| In Re: | |
| Douglas C. Frankel and Faith E. Frankel | Case No.         11-34158-TJC |
| Debtors | Chapter         7 |
| Joy P. Friolo | |
| Movant | Docket No.         44 |
| vs. | |
| Douglas C. Frankel | |
| Respondent | |

## <u>MEMORANDUM OF DECISION</u>

Joy P. Friolo seeks relief from the automatic stay to allow the Court of Appeals of Maryland to resolve a pending appeal against the debtor, Douglas C. Frankel. The state court litigation resulted in a judgment against Frankel for failure to pay overtime and bonuses and for attorneys' fees, subject to appeal. In an effort to recover her judgment, Friolo filed an adversary proceeding against Frankel, under 11 U.S.C. §523(a)(6), alleging that the judgment should be excepted from discharge because it arose from a willful and malicious injury. Friolo contends that the state court litigation should proceed because it will have collateral estoppel

1

consequences on the dischargeability action.  Frankel opposes the relief.  The Court will grant Friolo's motion for relief from the automatic stay to allow the appeal pending in the Court of Appeals of Maryland to be resolved.

FACTS

On February 4, 2000, Joy Friolo with her husband, Victor Salazar, filed suit against the Frankel and the Maryland/Virginia Med Trauma Group in the Circuit Court for Montgomery County, Maryland.  Friolo worked for Maryland/Virginia Med Trauma Group as a medical biller with a base salary of $30,000, and was discharged from employment on April 4, 1999.

The complaint consisted of ten counts, which included violations of the Maryland Wage Payment and Collection Law ("Payment Law"), Maryland Code (1991, 1999 Repl. Vol.), §§3-501, *et seq.* of the Labor & Employment Article, and the Maryland Wage and Hour Law ("Wage Law"), Maryland Code (1991, 1999 Repl. Vol.) §§3-401, *et seq.*  At trial, the issues submitted to the jury were Friolo's claims for breach of express contract (failure to give her a 5% bonus on monthly collections), violation of the Payment Law (failure to give bonuses), and violation of the Wage and Hour Law (failure to pay overtime rate).  The jury found that Frankel had failed to pay $6,841 in bonuses and $4,937.85 in overtime pay, for a total award of $11,778.85.

After the Court entered judgment, Friolo filed a petition seeking attorneys' fees and costs of $63,399.50.  The Wage Law provided for attorneys' fees as follows:

§3-427. Action against employer

* * *

(d)  *Costs.* – If a court determines that an employee is entitled to recovery in an action under this section, the court may allow against the employer reasonable counsel fees and other costs.

The Payment Law included a similar provision authorizing both attorneys' fees and enhanced damages in the same circumstances:

§3-507.1. Recovery of unpaid wages
* * *
(b) *Award and costs.* – If, in an action under subsection (a) of this section, a court finds that an employer withheld the wage of an employee in violation of this subtitle and not as a result of a bona fide dispute, the court may award the employee an amount not exceeding 3 times the wage, and reasonable counsel fees and other costs.

Thus, the Payment Law provides an award of attorneys' fees only if the withholding of the wages was *not* a result of a bona fide dispute. Frankel argued to the Circuit Court that since the jury failed to find that the wage withholding was not the result of a bona fide dispute, there was no reason to award attorneys' fees under the Payment Law.

The Circuit Court granted $4,711 in attorneys' fees and $1,552 in costs. Friolo appealed that award, arguing that the Circuit Court erred by not using the lodestar method to calculate fees. The Court of Appeals granted *certiorari* before any proceedings occurred in the Court of Special Appeals.

In the Court of Appeals opinion, it held that the award of attorneys' fees is discretionary, but explained that

[a] fee *was* allowed here, and no cross-appeal was taken from that decision. That issue, therefore, is not before [the court], either as legal error or abuse of discretion. The only issue is whether, in determining the amount of the fee, the court was required, as a matter of law, to use the lodestar approach and failed to do so. . . . The setting of a fee under that approach is largely discretionary.

*Friolo v. Frankel (Friolo I)*, 819 A.2d 354, 361 (Md. 2003). The Court concluded that the lodestar approach was the presumptively appropriate methodology and remanded the case to the Circuit Court and issued a directive to the Circuit Court on determining the correct amount of attorneys' fees with the lodestar method. In particular, it said,

[i]n addition to the other considerations that are part of the overall lodestar analysis, the court will need to consider that with respect to the bonuses, awardable for fee-shifting purposes only under §3-507.1, the jury made no

3

> predicate finding of a lack of a bona fide dispute. It will also need to determine whether the unsuccessful claims-for fraud, for a 5% interest in practice, Salazar's claims-were truly related to the successful ones and, if not, to disallow all times expended on those claims.

*Friolo I*, 819 A.2d at 371.

On remand, the Circuit Court awarded $65,348 in attorneys' fees, and that decision was also appealed. The Court of Special Appeals addressed whether the Circuit Court properly awarded attorney's fees to Friolo in accordance with the direction of the Court of Appeals and whether attorneys' fees should be awarded for post-judgment litigation in which the only complaint on appeal is the dissatisfaction with the original fee award. *Frankel v. Friolo (Friolo II)*, 907 A.2d 363, 364-365 (Md. App. 2006). The Court of Special Appeals found that the Circuit Court erred by not providing a clear explanation of the factors used in calculating its award and that Friolo was not entitled under to compensation for appellate and post-remand services. *Friolo II*, 907 A.2d at 369, 372.

The decision was appealed, and the Court of Appeals agreed with the Court of Special Appeals that the Circuit Court failed to provide an explanation of how the lodestar factors affected the award. *Friolo v. Frankel (Friolo III)*, 942 A.2d 1242, 1245 (Md. 2008). However, the Court of Appeals rejected the Special Court of Appeals restriction on appellate fees, and remanded the case to the Circuit Court to include in its lodestar analysis the appellate fees Friolo incurred in challenging the Circuit Court's attorneys' fee award. *Friolo III*, 942 A.2d at 1245.

On remand, the Circuit Court assigned the matter to a special master, who issued a report and recommendation. *See Friolo v. Frankel (Friolo IV)*, 28 A.3d 752, 766 (Md. App. 2011). The Circuit Court concluded that the appropriate award was $5,000 in attorneys' fees and $2,277 in costs, and ordered Friolo to pay $7,575 for one-half of the special master's fee. Friolo again appealed, contending that the Circuit Court erred as a matter of law or abused its discretion.

On appeal, and as pertinent here, the Court of Special Appeals addressed whether there was bona fide dispute for withholding the wages and whether the debtor waived this defense. It recounted the procedural history of the case before the Circuit Court issued its first ruling:

> In this case, Friolo complained that appellees withheld her wages in violation of the Payment Law. This allegation would ordinarily leave the *bona fide* dispute as an affirmative defense, but because § 3-507.1(b) includes the absence of a bona fide dispute as a statutory element, Friolo (wisely) *affirmatively plead* that appellees withheld her pay "*not* as a result of a bona fide dispute" (emphasis added). Not all allegations, however, are put at issue, for that requires a denial. As such, the issue would have stood in dispute if appellees denied that allegation, but the record indicates that they did not. Appellees never pled–presumably in the alternative–that even if the agreement was as Friolo alleged, they harbored a good faith belief to the contrary or a good faith belief that the Payment Law did not apply for some other reason. Section 3-507.1(b) conditions enhanced liability on a withholding that is both "in violation of [the Payment Law] *and* not as a result of a bona fide dispute," thus establishing them as independent conditions. The fact that appellees' answer asserted some grounds for exclusion from the Payment law does not necessarily imply that they held those grounds as a good-faith basis for withholding payment. Instead, their answer merely recited a standard set of defenses and alleged that appellees were not liable under the statute because Friolo's complaint "mischaracterize[d] and misrepresent[ed] the terms of any agreements between the parties." Appellees invoked the Wage and Hour Law's statutory exceptions of LE §3-403(a)(1) and (a)(5) as "affirmative defenses," but they did not assert the existence or nature of their good faith basis for withholding $11,778.85 from appellant in violation of the Payment Law. As such, they failed to deny Friolo's allegation and, under Rule 2-323(a), the issue was admitted as a matter of law.

*Friolo IV,* 28 A.3d 783-784 (citations omitted) (emphasis in original). The Court of Special Appeals vacated the Circuit Court judgment, and entered judgment for attorneys' fees of $45,335.28. Friolo was ordered to pay most of the master's fees and costs.

Friolo appealed, and the Court of Appeals granted *certiorari.* Frankel filed a petition for relief under chapter 7 on December 13, 2011, thereby staying the appeal. On March 15, 2012, Friolo filed adversary proceeding no. 12-180, contending that Frankel's failure to pay the wages

was willful and malicious and therefore the debt that arises in the Maryland litigation should be excepted from discharge under 11 U.S.C. §523(a)(6).

There appears to be no dispute that the Frankel paid the $11,778.85 jury award and the remaining debt will be whatever final claim Friolo holds for attorneys' fees.

Friolo filed her motion for relief from the stay on December 4, 2012.  The Court held a hearing on the motion on January 14, 2013.  This memorandum follows.

## CONCLUSIONS OF LAW

As applicable here, under 11 U.S.C. §362(d) the Court shall grant relief from the automatic stay for "cause."  The term "cause" is not defined in §362(d) but much case law has developed that provides guidance on its meaning.  In essence, "courts must determine when discretionary relief is appropriate on a case-by-case basis."  *Robbins v. Robbins*, 964 F.2d 342, 345 (4th Cir. 1992).

The proper analytical framework for the resolution of the motion is set forth in *Robbins*.[1]  There, the Fourth Circuit determined that, in deciding whether "cause" exists to allow a state court proceeding to go forward,

> The court must balance potential prejudice to the bankruptcy debtor's estate against the hardships that will be incurred by the person seeking relief from the automatic stay if relief is denied.  The factors that courts consider in deciding whether to lift the automatic stay  include (1) whether the issues in the pending litigation involve only state law, so the expertise of the bankruptcy court is unnecessary; (2) whether modifying the stay will promote judicial economy and whether there would be greater interference with the bankruptcy case if the stay were not lifted because matters would have to be litigated in bankruptcy court and; and (3)

---

[1] In the motion, Friolo fails to cite 11 U.S.C. §362 or any bankruptcy law or standards applicable to resolving a motion for relief from the automatic stay.  She argues that, under the *Rooker-Feldman* doctrine, this Court cannot sit as a de facto court of appeals and lacks jurisdiction to resolve a collateral attack on the decisions of the Maryland courts.  This Court disagrees that Friolo's *Rooker-Feldman* argument provides support for the motion.  "The *Rooker-Feldman* doctrine applies only when the losing party in a state court proceeding files an action in a federal court seeking redress for injury allegedly caused by the state court's decision."  *Sasscer v. Parker*, 2007 WL 3071432, 4 (Bankr. D.Md. 2007).

whether the estate can be protected properly by a requirement that creditors seek enforcement of any judgment through the bankruptcy court.

*Robbins*, 964 F.2d at 345 (citations omitted).  The Court will turn to these factors.

*State Law versus Bankruptcy Court Expertise.*

For purposes of Friolo's §523(a)(6) claim, the "debt" that she contends should be excepted from discharge is the debt that results from the Maryland litigation.  That, of course, is primarily a matter of Maryland statutory law and within the province of the Maryland court's expertise.  But the determination of whether that debt is excepted from discharge is a determination this Court will make applying the standards of §523(a)(6).  Specifically, this Court must determine if the debt that results from the Maryland litigation was incurred by willful and malicious injury.  If the Maryland litigation will have no preclusive effect on the dischargeability action, nothing would be gained by allowing that costly and lengthy proceeding to continue.

The Court concludes that the first *Robbins* factor has a neutral impact on the motion.  As described further below, the critical questions raised by the motion are whether both courts' expertise will be required to resolve the adversary proceeding, and, if so, what should be the proper order of invoking that expertise.

*Judicial Economy.*

The resolution of the Maryland litigation may have issue preclusive effect in the dischargeability action.  Because the Maryland litigation has been ongoing for thirteen years, judicial economy would likely be served by allowing that litigation to conclude – rather than having this Court start anew – on matters that would have preclusive effect here.  That result would also ensure that the Maryland court's expertise is properly invoked.  However, merely because it may be necessary to have the Maryland litigation continue to resolution does not necessarily mean that that litigation should be allowed to continue *before* this court resolves any

§523(a)(6) issues.  Thus, the notion of judicial economy in *Robbins* implicates both the proper forum for resolution of issues and the proper timing for resolution of various issues as between the bankruptcy and state courts.

Friolo contends that in the Maryland litigation the parties are litigating the issue of whether the Frankel's failure to pay wages was subject to a bona fide dispute.  *See* Md. Code Ann., Lab. & Empl. §3-507.1.  Friolo further contends that this issue was resolved in *Friolo IV*, where the Court of Special Appeals concluded that "the issue was admitted [by Frankel] as a matter of law." *Friolo IV* at 784.  Friolo points out that the Maryland Court of Appeals used the term "willfully" in describing the bona fide dispute issue. *Friolo I* at 364 ("In strengthening the Payment Law in 1993, the Legislature considered the arguments pro and con and struck the balance of allowing a reasonable counsel fee under §3-507.1 only in those situations where the employer acted willfully – in the absence of a bona fide dispute.").  Therefore, according to Friolo, once the Maryland litigation becomes final, it will be entitled to issue preclusion on whether the debtor acted willfully within the meaning of §523(a)(6).

Friolo's contention is dependent on her claim that the Maryland litigation will be entitled to collateral estoppel effect on the willfulness issue.  In *Grogan v. Garner*, 498 U.S. 279, 284 & n.11, 111 S.Ct. 654, 657 & n.11, 112 L.Ed.2d 755 (1991), the Supreme Court held that principles of collateral estoppels apply in dischargeability proceedings.  Federal courts are required "to give preclusive effect to state-court judgments whenever the courts of the State from which the judgments emerged would do so." *Allen v. McCurry*, 449 U.S. 90, 96, 101 S.Ct. 411, 415, 66 L.Ed.2d. 308 (1980).  Therefore, federal courts must apply the forum state's collateral estoppel law as a matter of full faith and credit.

In Maryland, collateral estoppel is intended to "avoid the expense and vexation of multiple lawsuits, conserve judicial resources, and foster reliance on judicial action by minimizing the possibilities of inconsistent decisions." *Colandrea v. Wilde Lake Cmty. Ass'n*, 761 A.2d 899, 907 (Md. 2000) (quoting *Murray Int'l Freight Corp. v. Graham*, 555 A.2d 502, 503–04 (Md. 1989)). Maryland courts follow a four-part test to determine if the doctrine of collateral estoppel applies:

1. Was the issue decided in the prior adjudication identical with the one presented in the action in question?
2. Was there a final judgment on the merits?
3. Was the party against whom the plea is asserted a party or in privity with a party to the prior adjudication?
4. Was the party against whom the plea is asserted given a fair opportunity to be heard on the issue?

*Wash. Suburban Sanitary Comm'n v. TKU Assocs*., 376 A.2d 505, 514 (Md. 1977).

There is no dispute that the third element is met, and the second element will not be met until the Maryland litigation is finally resolved. The primary dispute lies with the first and fourth elements. Friolo contends that the first element is met because a final determination in the Maryland litigation that Frankel admitted as a matter of law that the debt was not subject to a bona fide dispute establishes willfulness for purposes of §523(a)(6). Frankel disagrees. This question, of course, cannot be made in the context of the stay relief motion. And if this were the only potential collateral estoppel consequence of the Maryland litigation, the Court might well turn to it in an effort to streamline the litigation between the parties. Put simply, if Frankel is correct that the first element is not met, the Maryland litigation could not have collateral estoppel effect on the willfulness issue without regard to the other factors.

However, the Court must take into account additional language in *Friolo IV*. There, the Court of Special Appeals described the issue, at least in passing, as whether the debtor "harbored a good faith belief" that the wage obligation was subject to a bona fide dispute. *Friolo IV* at 783-

9

784.  It would appear that the determination of whether the obligation to pay a wage is "not subject to a bona fide dispute" could be made without regard to whether the payor did or did not "harbor[] a good faith belief" that a bona fide dispute existed.  As examples, the payor could "harbor[] a good faith belief," but simply have been wrong or received bad legal advice.  Stated otherwise, "a good faith belief" would not seem to require absolute certainty.

The distinction may not be pertinent to a Payment Law claim.  However, it may well have significance to a claim under §523(a)(6), where "willfulness" is an element of the claim.  A factfinder could conclude that a debtor's "good faith belief" that the wage claim is subject to a bona fide dispute may negate a determination that the debtor acted willfully, even if it was later determined that the obligation was not, in fact, subject to a bona fide dispute (or that the bona fide dispute defense was waived in an earlier litigation).

The Court concludes that judicial economy and the resources of the parties would be better served by having the Court of Appeals resolve the pending appeal.  At that point, there should be a resolution, and a final record, on the bona fide dispute issue from the Court of Appeals.  This Court can then determine the collateral estoppel consequences, if any, of that resolution.  To do anything different at this stage of the Maryland litigation makes it more likely that time and resources may be wasted.[2]

*Estate Protection.*

The order lifting the stay will provide that the stay is modified to allow the appeal before the Court of Appeals to be resolved.  Once the Court of Appeals issues its decision, the parties shall return here, whether or not the appeal finally concludes the Maryland litigation.

---

[2] An additional potential collateral estoppel consequence of allowing the Maryland litigation to run its course is that the debt will be liquidated.  The Court will address the proper forum for liquidating the debt after the Court of Appeals enters its ruling, to the extent necessary.

CONCLUSION

The most significant of the *Robbins* factors here is the consideration of judicial economy.

In light of that factor, the Court will grant relief from the automatic stay to allow the appeal

before the Maryland Court of Appeals to be resolved.


cc:    Movant
         Movant's counsel
         Respondent
         Respondent's counsel


**<u>END OF MEMORANDUM OF DECISION</u>**